591 So.2d 829 (1991)
Alan Scott MORROW
v.
Colleen Ann Mustico MORROW.
No. 90-CA-1097.
Supreme Court of Mississippi.
December 11, 1991.
*830 William B. Jacob, Daniel P. Self, Jr., Joseph A. Kieronski, Jr., Self & Jacob, Meridian, for appellant.
Earl P. Jordan, Jr., Jordan & Jones, Meridian, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:
This child custody modification case arose on the appeal of Alan S. Morrow, the complainant from the judgment of the Chancery Court of Lauderdale County in favor of Colleen Mustico Morrow, the defendant and appellee. The appellant timely filed a notice of appeal, assigning as error:
The court was manifestly in error in finding from the evidence a lack of material change of circumstances adversely affecting the minor child of the parties and that the chancellor was manifestly wrong in the application of Mississippi law.
Ms. Mustico argues in her brief, without properly cross-appealing, that the chancery court failed to comply with the Uniform Child Custody Jurisdiction Act and therefore lacked jurisdiction to conduct the proceedings below.

I.
Alan Morrow and Colleen Mustico married in August of 1979. On February 11, 1983, Mary was born. The Morrow family lived in Adak, Alaska, from August 1985 until March 1988. In March 1988, the couple separated and Ms. Mustico relocated to Rhode Island. During her time in Alaska and for two years in Rhode Island, Ms. Mustico worked as a director of youth programs for the U.S. Navy. From March 1988 until July 1989, Mary continued to live with her father in Adak. During that time, on June 13, the Morrows were divorced in an Alaska court. The court decreed that the parents share joint child custody of Mary in two-year alternations beginning with Mr. Morrow during the 1989-1991 school years. On June 1, 1989, Ms. Mustico picked up Mary and took her to Rhode Island for visitation. In late July, Mr. Morrow picked the child up and took her to Meridian. Mr. Morrow already had orders for Mississippi when the Alaska court granted a divorce, and Mary moved to Meridian with him when he reported to the Naval Air Station on July 27, 1989.
On May 31, 1990, in the Chancery Court of Lauderdale County, Alan Morrow filed a complaint to modify the Alaska decree of divorce, citation for contempt, and other relief against his former wife, Colleen Mustico. Mr. Morrow asserted a material change in Mary's welfare and asserted that the Mississippi chancery court had jurisdiction to modify the divorce decree.
On June 11, 1990, Ms. Mustico, as a complainant in a habeas corpus suit, having already been served with Mr. Morrow's complaint to modify custody, filed a request for special appearance to tender monies until a determination of jurisdiction could be made. On June 11, 1990, Chancellor Jerry G. Mason heard the second complaint for writ of habeas corpus filed by Ms. Mustico. The court ordered Ms. Mustico to pay child support arrearage and ordered *831 Mr. Morrow to give physical custody of Mary to Ms. Mustico immediately.
On August 15, 1990, Ms. Mustico filed an answer to Mr. Morrow's modification complaint. She admitted that Mary had lived in Mississippi more than six months preceding the action, but denied Mr. Morrow's allegation that the Chancery Court of Lauderdale County had jurisdiction to modify the couple's Alaska divorce decree.
Mr. Morrow testified on the defendant's motion challenging jurisdiction that his connection with Mississippi was solely by virtue of his naval assignment. He testified that, at the time of his Alaska divorce, although his driver's license was from New York, his home of record was in New Hampshire, and in New York, the Alaska court had found him to be a resident and domiciliary of Alaska. At the time of the modification hearing, Mr. Morrow's car was registered in New York and he carried a New York driver's license. Having heard the above testimony, the chancellor overruled Ms. Mustico's motion to decline jurisdiction of the person under Miss. Code Ann. § 93-23-27 (1972) and proceeded to hear the modification issue.
Morrow admitted on cross-examination that, in late September of 1989, Mary had expressed dissatisfaction with her sitter, and that he had engaged a new sitter in November. Mary's new sitter was Vickie, who was Red Cross certified, but was not authorized to baby-sit on base. Morrow testified that Vickie stayed over night at his home between November and January so she would not have to come unusually early when Mr. Morrow's work demanded he leave for work early; he stated that Vickie stayed on the couch.
Ms. Mustico and Mr. Morrow testified that Ms. Mustico visited at Thanksgiving, 1989, at her own request. Ms. Mustico stated that she wanted to see Mary although Thanksgiving was not scheduled visitation. During that visit she rejected Mr. Morrow's suggestion of reconciliation. However, the parties both acknowledged that, during Mustico's Christmas visit, they were unable to resolve their personal differences. After heated conversation and some violence and threatening language, Ms. Mustico left during the night with Mary, and returned her on January 2, 1990, to her father in Meridian.
Morrow testified at length about Ms. Mustico's unfulfilled promises of telephone calls and visits with her daughter and of the effects upon the daughter of these unrealized expectations. Ms. Mustico gave her explanations to the Court.
Both home environments were described by the parties and witnesses. Ms. Mustico was working two to three jobs at intervals. One job was as bartender, from which location she made her telephone calls to Mary since she had no home telephone. Mr. Morrow monitored the telephone calls "to be sure that [Mary] can understand what her mother is talking about."
Each party claimed that there were overnight visitors of the opposite sex in the other's home during Mary's presence. Ms. Mustico criticized Morrow's attention to his daughter's hygiene habits and his meal planning. Morrow complained of Ms. Mustico's drinking habits and her "live-in" male friends.
The chancery court rendered its opinion on September 4, 1990, and its judgment declining to modify custody on October 5, 1990. The chancellor found that, as defined by Miss. Code Ann. § 93-23-5 (1972), Mary's homestate was Mississippi at that time and the chancery court did have jurisdiction of the parties and subject matter of Mr. Morrow's complaint. Regarding the substantive issues, the court found from the facts that Ms. Mustico had engaged in an "illicit relationship" during Mary's visit but that, under the totality of the circumstances, the relationship had not detrimentally affected Mary at her young age. The court declined to change the joint custody award as previously ordered because of the absence of a change of circumstances that adversely affected the child. However, in the judgment the chancellor ordered that
the Alaska Decree of Divorce is modified to the extent that the Defendant shall be prohibited from exercising visitation or custody with Maryeileen Morrow in the presence of any male to whom she is not *832 married or to whom she is not related from 10:30 P.M. to 7:00 o'clock A.M. on any day that Maryeileen Morrow has visitation with or is in the custody of the Defendant... .
Mr. Morrow appealed the judgment of the chancery court.

II.

DID THE CHANCERY COURT HAVE JURISDICTION?
Ms. Mustico, appellee, raises the threshold issue of whether the chancery court committed procedural error in assuming jurisdiction to hear the petitioner/appellant's case in the first instance. The appellee's procedural posture bears examination. In order to preserve an objection to personal jurisdiction, the party making that objection must assert it in a pre-answer motion or in the answer. O'Neill v. O'Neill, 515 So.2d 1208, 1212 (Miss. 1987); see also Alpaugh v. Moore, 568 So.2d 291, 294 (Miss. 1990). Ms. Mustico did so. While her answer to the modification complaint did not specifically mention Civil Procedure Rule 12(h), she did deny the assertion of the chancery court's jurisdiction[1]. Prior to her answer, Ms. Mustico appeared before the Lauderdale County court on a complaint for habeas corpus. While her complaint in that action does not appear in this court file, this court file does include Ms. Mustico's special appearance to tender monies. In that document, she noted the yet-undetermined jurisdiction of the Lauderdale County court. Therefore, based on available records, it appears that Ms. Mustico preserved her objection to personal jurisdiction in the appearances she made before the chancery court in this state.
The next question to address is whether Ms. Mustico carried that issue forward to this Court. For an appellee to raise an argument other than a response to the appellant, the appellee must comply with the requirements for filing a cross-appeal with this Court.[2] Where an appellee raises an issue not raised by the appellant without filing a notice for cross-appeal, it is within this Court's discretion to either address or ignore the issue. See Tutor v. Tutor, 494 So.2d 362, 362-363 (Miss. 1986). We decline to address this issue.

III.

CUSTODY MODIFICATION
Addressing the standard of review, the Supreme Court will not reverse a chancellor's findings of fact where the Court finds those facts supported by substantial credible evidence in the record unless the chancellor committed manifest error. Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987). This rule includes two exceptions. The chancellor is fully reviewable on whether the chancery court applied the correct legal standard. Burkett v. Burkett, 537 So.2d 443-446 (Miss. 1989). Also, the chancellor has discretion to act only when actual conflict presents itself, that is, the evidence presents "at least two possible affirmable decisions... ." Id. Where evidence conflicts, however, this Court typically *833 defers to the chancellor as fact-finder. McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss. 1987).
Regarding the substantive law to apply in child custody modification suits,
the movant must prove by a preponderance of the evidence that since the entry of the judgment or decree sought to be modified there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such adverse change has been shown, the moving party must show by preponderance of the evidence that the best interest of the child requires the change in custody.
Newsom v. Newsom, 557 So.2d 511, 515-516 (Miss. 1990). This material change must be considered in the totality of the circumstances. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983). While numerous factors may go into the initial consideration of a custody award, see, e.g., Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change. Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss. 1983).
An extramarital relationship is not, per se, an adverse circumstance. Ballard, 434 So.2d at 1360 defined the inquiry as ensuring against harm to the child, noting parenthetically, "whether such [parental] behavior is immoral or not... ." See also Kavanaugh v. Carraway, 435 So.2d 697 (Miss. 1983). Thus, while the appellant expresses concern that Ms. Mustico's past conduct poses a hazard to the child's well-being, the chancellor's opinion makes clear that whatever hazard is present does not rise to the level of posing a danger to the child.
Mr. Morrow argued change in circumstances based on Mary's approaching school age, Ms. Mustico's alleged failure to telephone when promised, Ms. Mustico's difficulty in conversing by telephone from her work due to noise, and her inability to come from Rhode Island to Mary's birthday party in Mississippi while she worked two seven-day-a-week shifts. After Mr. Morrow initiated proceedings, he learned of Ms. Mustico's boyfriend. Mr. Morrow argued that Mary's visits with her mother rendered her shy and clinging, and not her usual self, and that her best interests would be served by a custody modification.
Nonetheless, the chancellor considered it sufficient to modify the Alaska divorce decree by forbidding Ms. Mustico to continue conducting her "illicit" relationship with her male friend while her daughter resides with her. The chancellor noted that this seven year old child was unable, with her present lack of maturity and understanding, to evaluate the import of her mother's action. The court held that it could not presume detrimental effect on her at this age to justify a change of custody. The record provides no substantial credible evidence to show an adverse change affecting Mary of such proportions, given the totality of the circumstances, that Mary's best interest would be served by further modifying the custody decree. Because more than one possible affirmable decision arose, the chancellor was acting within his discretion as a finder of fact in the face of conflicting evidence. Thus, under our standard of review, the chancellor committed no manifest error, and is upheld.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Miss.R.Civ.Pro. Rule 12(h) states:

A defense of lack of jurisdiction over the person . .. is waived ... if it is neither made by a motion under this rule nor included in a responsive pleading... .
[2] Miss.Code.Ann. § 11-51-3 (1972) states: "An appeal may be taken to the supreme court from ... any final decree of the chancery court, not being by consent, by any of the parties...." Miss.Sup.Ct. R. 3(a) (1990) states:

An appeal permitted by law as of right from a trial court to this Court shall be taken by filing a notice of appeal with the clerk of the trial within the time allowed by Rule 4. Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the perfection of the appeal, but is ground only for such action as this Court deems appropriate, which may include dismissal of the appeal.
Miss.Sup.Ct. R. 4 (1990) states:
(a) In a civil ... case in which an appeal or cross-appeal is permitted by law as of right from a trial court to this court the notice of appeal required by rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appeal from... . (c) If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed
....