795 So.2d 614 (2001)
Gayla CAIN, Appellant
v.
Timothy CAIN, Appellee.
No. 2000-CA-01786-COA.
Court of Appeals of Mississippi.
September 25, 2001.
*615 Roy J. Perilloux, Jackson, James Eldred Renfroe, Daniel Brian Allen, for Appellant.
William F. Vick, Jackson, for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. Gayla Cain appeals the decision of the Rankin County Chancery Court with the Honorable John H. Grant, III presiding, wherein the parties stipulated to Gayla being involved in an adulterous affair during the separation. The Cains were granted a divorce on the stipulated ground of adultery and custody of the children was awarded to Timothy Cain. Gayla Cain offers the following issues on appeal.
1. DID THE CHANCELLOR COMMIT ERROR IN AWARDING CUSTODY OF THE MINOR CHILDREN TO APPELLEE BY PENALIZING APPELLANT FOR AN ADULTEROUS RELATIONSHIP?
2. WAS THERE COLLUSION BY STIPULATING TO ADULTERY AND/OR DID THE DIVORCE BECOME PRO CONFESSO BY SUCH STIPULATION?
Finding no error in the ruling of the lower court and no merit to either of the Appellant's claims, we affirm.

FACTS
¶ 2. Timothy and Gayla Cain were married in October of 1992 and separated on *616 October 1, 1999. On November 5, 1999, Timothy filed a petition for physical and legal custody, care, support and maintenance of the minor children. The parties were granted joint physical and legal custody. As part of the agreement made with the court, both parties agreed to refrain from consuming alcohol, smoking and allowing members of the opposite sex not related by blood to be an overnight guest in their homes while the children were present. Both of the parents had to submit to random drug testing and both were required to keep health and hospitalization insurance for the children. The order also included the common instructions on care and maintenance of the children.
¶ 3. Gayla filed for divorce on December 9, 1999, on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. At trial, the parties stipulated to Gayla being involved in an adulterous affair during the separation. Testimony was offered by both parties as to the care and maintenance of the children during the marriage and during the separation period. Both parties presented witnesses that testified on their respective behalf. Several of the witnesses were neutral in their testimony, painting neither parent as a paradigm. However, Tim's witnesses painted a better picture of his parenting skills. At the end of testimony, Judge Grant ultimately ruled that Tim should be granted permanent legal and physical custody of his daughters.

DISCUSSION

1. DID THE CHANCELLOR COMMIT ERROR IN AWARDING CUSTODY OF THE MINOR CHILDREN TO APPELLEE BY PENALIZING APPELLANT FOR AN ADULTEROUS RELATIONSHIP?
¶ 4. Judge Grant enumerated for the record his findings regarding his custody ruling. Following the established case law beginning with Albright v. Albright, 437 So.2d 1003 (Miss.1983), as the standard, he ruled in favor of Tim. The judge found that tender years and the sex of the children favored the mother. He found that willingness and capacity to provide care, moral fitness, stability of home environment, and the other factors were all in favor of Tim. Id. at 1005. He found that the remaining factors, continuity of care, employment responsibilities, emotional ties, home, school and community record did not favor either one of the parents over the other.
¶ 5. Gayla argues that Judge Grant based his custody decision on the fact that she committed adultery during her marriage. However, the record shows several elements led to Gayla losing custody. Testimony of several witnesses, including her own, indicated that she exhibited poor judgment in her behavior in front of her children, in clear violation of a court order. However, to a lesser degree, Tim, also violated some of the conditions of the order. He, like Gayla, smoked in the presence of the children, which he was ordered not to do. However, Gayla continued to have inappropriate displays of affection in public and in front of the children with her lover and she drank and allowed others do to so in front of her children. There were also bouts of arguments and violence that led the chancellor to decide Gayla's home was unstable.
¶ 6. The six-year-old's teacher testified that the child came to school in clothes that were too small for her and dirty. One such piece of clothing was entered into evidence and the teacher said the last time she was near the coat it had a foul odor. There was testimony regarding health care and poor decisions made by Gayla and her *617 sister, Angela, who provided daycare for the children. The most egregious of which is hard to choose. There is the time when the eldest child was vomiting and the youngest had not been taken to a doctor when she had pneumonia and the mother went out of town. Or, it could be the time when the youngest child had a broken collar bone and while not wearing the doctor prescribed brace, was allowed to jump on a trampoline while at daycare.
¶ 7. There are too many instances of instability and questionable decision making on Gayla's part to believe that the judge's ruling was based solely on the fact that she was involved in an adulterous affair. At every turn, Gayla showed her lack of good judgment. She took the children on vacation and spent the night with people she knew used drugs. She did not keep insurance on her children because she assumed that she would end up paying an unfair share of the costs. Predictably, Gayla's testimony conflicts with the testimony of Tim's. She offers explanations to try to soften the impact and lessen the damage the testimony inflicted. This custody decision was made with Judge Grant sitting as the finder of fact. "Where evidence conflicts, the Mississippi Supreme Court typically defers to the chancellor as fact finder." Ligon v. Ligon, 743 So.2d 404, 406 (¶ 5) (Miss.Ct.App.1999), quoting Morrow v. Morrow, 591 So.2d 829, 832 (Miss.1991). This Court will not reverse a chancellor unless his ruling was manifestly wrong, clearly erroneous or if he applied an erroneous legal standard. Thrift v. Thrift, 760 So.2d 732, 735 (¶ 10) (Miss. 2000) (citing Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994)).
¶ 8. Much to Gayla's apparent disbelief, even if moral fitness had been totally excluded as a factor, she still had too few elements in her favor to warrant granting her custody. The chancellor committed no error.

2. WAS THERE COLLUSION BY STIPULATING TO ADULTERY AND/OR DID THE DIVORCE BECOME PRO CONFESSO BY SUCH STIPULATION?
¶ 9. Gayla's last assignment of error has no merit. Gayla offers Miss. Code Ann § 93-5-1 (Supp.2000) and an abbreviated definition of collusion as support for her assertion. Adultery is an accepted ground for divorce unless adultery was committed by collusion of the parties. Id.
CollusionIn divorce proceedings, collusion is an agreement between husband and wife that one of them shall commit or appear to have committed, or be represented in court as having committed, acts constituting a cause of divorce, for the purpose of enabling the other to obtain a divorce. But is also means connivance or conspiracy in initiating or prosecuting the suit.... With the enactment of "no-fault" divorce statutes ... agreements or acts of collusion are no longer necessary.
Blacks Law Dictionary, 6th Ed.1990.
¶ 10. A fraud must have been committed on the court for collusion to have occurred. There was no fraud here. Pro confesso intimates that a default judgment was entered. Such is not the case. Both parties presented evidence and were represented by counsel. It was well known that Gayla was involved with a man other than her husband during the time of the pending divorce. She stipulated to that fact with Tim accepting that stipulation. She testified to the extent of her relationship with her boyfriend as did her boyfriend. As the definition states above, there is no necessity to commit collusion as divorces are fairly easy to obtain. The *618 parties could easily have taken the "no-fault" route. However, Tim had grounds for a divorce from Gayla and the chancellor granted it to him. There is no merit to this argument.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, and CHANDLER, JJ., concur.
BRANTLEY, J., not participating.