¶ 25. I respectfully dissent to the majority's holding in this case. The actions and immoral lifestyle of Atterberry clearly warrant a review of the chancery court's *Page 1274 
original finding which gave custody of the parties' children to her.
¶ 26. We have held:
 [r]egarding the substantive law to apply in child custody modification suits, the movant must prove by a preponderance of the evidence that since the entry of the judgment or decree sought to be modified there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such adverse change has been shown, the moving party must show by preponderance of the evidence that the best interest of the child requires the change in custody.
Morrow v. Morrow, 591 So.2d 829, 833 (Miss. 1991) (citing Newsom v.Newsom, 557 So.2d 511, 515-16 (Miss. 1990)). Additionally, this material change must be considered in the totality of the circumstances. Tuckerv. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Kavanaugh v. Carraway,435 So.2d 697, 700 (Miss. 1983).
¶ 27. The totality of the circumstances shows that Mrs. Atterberry should not have custody of either of the two children from her marriage to Mr. Mosley. Several incidents have come to light since the divorce which should be considered:
 1) Atterberry and the parties' minor son, P.J., lived with her boyfriend for a few months and she admitted having sexual relations with him during this time;
 2) Atterberry committed perjury by telling the chancellor at the divorce hearing that she and her boyfriend were not in a relationship and not revealing the fact that she was four-months pregnant;
 3) Atterberry admitted to cheating on her 1998 and 1999 income taxes;
 4) Atterberry committed credit card fraud by using her daughter's Social Security number to establish credit in her own name; and
 5) Atterberry was negligent in seeing that P.J. got to school. He was tardy sixty-nine times and had twelve absences in one year.
 6) Atterberry interfered with Mosley's visitation with P.J.
¶ 28. At the modification hearing, Atterberry admitted to each of these acts. The judge responded by sentencing her to two days in jail for the perjury. In Pierce v. Heritage Props., Inc., 688 So.2d 1385 (Miss. 1997), we vacated a $500,000 judgment because Pierce committed perjury regarding to the facts surrounding the incident that led to the award. Although the majority says Pierce has no bearing on this case, I disagree. Atterberry's lies regarding her relationship with her boyfriend and the fact that she did not advise the court of her pregnancy played a part in the chancellor's decision to award custody of the children to her. Just like in Pierce, the lies affected the outcome of the case.
¶ 29. The chancellor also overlooked the fact that Atterberry had subjected P.J. to a living situation in which extramarital sex took place because the living arrangements were for "a cost reducing situation." Although a custodial parent's sexual relations with a third person outside of marriage do not, by themselves, warrant modification of the child custody order, there are other factors to consider. Morrow, 591 So.2d at 833; Phillips v. Phillips, 555 So.2d 698 (Miss. 1989). In addition to fornication, since her divorce Atterberry has committed crimes and lied, all the while subjecting her young son to a lifestyle unfit for an upright person, much less a child. That the majority now condones this type of action flies in the face of all precedent. Even Atterberry's 18 year old daughter refuses to follow the court order instructing her to live with her mother because *Page 1275 
she does not want to live in the environment fostered by Atterberry.
¶ 30. The reasons for the chancellor's findings matter not in this instance, we should look to the facts. In Ballard v. Ballard,434 So.2d 1357, 1360 (Miss. 1983), we held that only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change. I fail to understand how a home-life like this can allow P.J.'s mental or emotional health to flourish. He misses entirely too much school and is being taught by his mother that lying and promiscuity are acceptable, even normal. In addition to the factors listed above, Atterberry moved at least three times in the year after the divorce and had as many different jobs. Not only has there been an obvious change in circumstances since the chancellor awarded custody of the children to Atterberry, it boggles the mind to think that anyone could believe it to be in P.J.'s best interest to remain in her custody.
¶ 31. I would remand this case to the chancery court with instructions to review the custody situation.
EASLEY, J., JOINS THIS OPINION.