908 So.2d 791 (2005)
Mark BALIUS, Appellant
v.
Melanie GAINES, Appellee.
No. 2003-CA-01777-COA.
Court of Appeals of Mississippi.
February 22, 2005.
Rehearing Denied May 24, 2005.
Certiorari Denied August 11, 2005.
*794 David Clifton Morrison, attorney for appellant.
*795 David R. Daniels, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. After a trial, the Chancery Court of Harrison County entered a judgment that, among other holdings, modified an earlier agreed judgment of paternity to adjust the father's visitation with the minor child. Mark Balius, the father, raises thirteen assignments of error attacking aspects of the trial, judgment, and other proceedings. We find all of Balius's issues to be without merit and, therefore, we affirm the judgment of the Chancery Court of Harrison County.

FACTS
¶ 2. On November 29, 1999, Melanie Gaines filed a complaint for paternity against Mark Balius. The complaint alleged that Balius was the father of Melanie's son, Jared Evan Balius, born out of wedlock on February 19, 1999. Balius answered and admitted he was Jared's biological father. In their pleadings, both Gaines and Balius requested primary custody of Jared. On February 14, 2000, the chancery court entered a temporary order vesting temporary physical custody in Gaines and granting visitation to Balius.
¶ 3. After a hearing, an agreed judgment of paternity was entered dated June 13, 2000. The judgment found Balius to be Jared's father. The parties were awarded joint legal custody and Gaines was awarded physical custody. Balius was awarded holiday visitation and daily weekday visitation which would switch to overnight, and, later, weekend visitation as Jared grew older. Balius was ordered to pay $425 per month in child support and to pay for Jared's health insurance when the current policy expired. The judgment expressly allowed Gaines two weeks' vacation time in July or August 2000 to bring Jared to visit her family.
¶ 4. The record reflects that the parties were unable to operate peacefully within the terms of the agreed judgment, resulting in contentious litigation. Both parties filed numerous motions, including motions by Balius for citation of contempt, change of custody or additional visitation. On July 23, 2001, the case came on for trial, but the trial court suspended the proceedings and ordered the parties to undergo counseling with Vivian Tate to address co-parenting skills. The order appointed Tate as the court's expert in the matter and stated that Tate could not be called as a witness by either party in subsequent proceedings.
¶ 5. On December 11, 2001, Gaines moved to California with Jared and sent Balius a letter offering him additional visitation due to the move. She filed a notice of address change on December 12, 2001, pursuant to Rule 8.06 of the Uniform Chancery Court Rules. On December 13, Balius filed an ex parte motion for temporary relief and preliminary injunction stating that Gaines had fled the jurisdiction in order to prevent Balius from exercising his court-ordered visitation. The same day, the chancery court entered an ex parte temporary order finding that Gaines had fled the jurisdiction, ordering Gaines to appear and show cause why Balius should not be awarded temporary custody, and imposing a moratorium on child support, with child support funds to be held in trust. On December 18, Gaines moved for a continuance, stating that her attorney could not attend the show cause hearing on December 21, the date set by Balius. Two days later, Gaines filed a motion to set aside the ex parte temporary order and for sanctions against Balius and his counsel for obtaining the order without noticing *796 Gaines's counsel and under false pretenses. On December 21, in the absence of Gaines and her counsel, the court entered a temporary order finding that Gaines fled the jurisdiction, granting temporary custody to Balius, and continuing the moratorium on child support. Balius traveled to California but was unable to locate Gaines, who admitted at the trial that she considered the temporary order improper and, therefore, secreted Jared from Balius.
¶ 6. On December 31, the court entered an order holding the temporary order in abeyance until further order of the court. On January 28, 2002, the court entered a temporary order granting Balius visitation from the first to the fifteenth of each month, with Balius responsible for the costs of picking up Jared and Gaines responsible for the costs of Jared's return. On January 31, Gaines moved the court to hold Balius in contempt for failure to pay child support. Balius responded and also moved for contempt.
¶ 7. The trial occurred in March, 2002. On May 28, 2002, the court entered the judgment that is the subject of this appeal, entitled "Judgment Incorporating Findings of Fact and Conclusions of Law." The chancellor expressly declined to address every one of the parties' myriad claims, stating that "all other relief not specifically granted is herein denied." The chancellor found both parties to be in willful, wanton, and contumacious contempt of court to a greater or lesser degree. The chancellor found that there had been no sufficient showing of a material change in circumstances adversely affecting Jared to justify a change in custody or child support. Due to Gaines's move to California, the chancellor imposed a new visitation regime awarding Balius certain holiday and optional visitation. The chancellor ordered Balius to pay the three months' child support he had withheld under the December 13 order and to resume child support. Finally, the chancellor found that Balius and his counsel had abused the court system in three instances, including improper conduct in December 2001 that resulted in the order awarding temporary custody to Balius. The court imposed sanctions of $1,000 from Balius and $500 from his attorney, payable to Gaines as attorney's fees.
¶ 8. On May 29, 2002, Gaines filed a motion requesting clarification and modification of the visitation provision. Balius moved to set aside the judgment, reconsider the judgment, or for specific findings of fact under UCCR 4.01. Other motions followed from both parties, primarily related to implementation of the visitation provision. The chancellor signed a judgment on the post-trial motions on July 17, 2003, nunc pro tunc to June 2, 2003. The chancellor considered Balius's motions as brought under Mississippi Rule of Civil Procedure 59 or 60 and found them to be without merit. The chancellor clarified and modified the visitation provision of the May 28, 2002 judgment as requested by Gaines. Balius appealed.

LAW AND ANALYSIS

I. THE JUDGMENT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 9. Under this heading, Balius attacks both the original judgment of May 28, 2002 and the later judgment granting Gaines's post-trial motion for clarification and modification of the original judgment. We first address Balius's assault on the original judgment. Balius avers that several of the chancellor's fact-findings were manifestly erroneous, entitling him to a new trial.
¶ 10. We begin by exploring the standard of review applicable to the May 28 judgment. This Court reviews the decision *797 of a chancellor for abuse of discretion. McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000). We may disturb the chancery court's decision only if the chancellor's findings were unsupported by substantial evidence and were manifestly wrong or clearly erroneous, or if the chancellor applied an incorrect legal standard. Pearson v. Pearson, 761 So.2d 157, 162 (¶ 14) (Miss.2000). We review questions of law de novo. Burnett ex rel. Islam v. Burnett, 792 So.2d 1016, 1019 (¶ 6) (Miss.Ct.App.2001).
¶ 11. Balius urges that this Court afford less deference to the chancellor's judgment because the chancellor adopted Gaines's proposed findings of fact and conclusions of law. It is true that, when a chancellor adopts verbatim or "almost verbatim" one party's findings of fact and conclusions of law, "the deference normally afforded to the chancellor's findings is lessened." Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987). In this case, the record shows that at the end of the trial, the court requested that the parties submit proposed findings and conclusions. Apparently, Gaines complied with the request but Balius failed to do so. The style of the judgment did indicate the judgment incorporated findings of fact and conclusions of law. But, it is entirely unclear the extent to which the chancellor's decision incorporated Gaines's proposed findings and conclusions, as those proposals were not included in the record on appeal. Thus, we are unable to discern whether the chancellor copied Gaines's findings and conclusions "verbatim" or "almost verbatim," which would necessitate less deferential review. On examination of the judgment itself, the chancellor was not particularly indulgent of Gaines and roundly and repeatedly chastised both parties for their conduct regarding the minor child. Gaines's answer to Balius's motion to set aside shows Gaines did not agree that the chancellor simply copied Gaines's proposals. Gaines denied that the judgment copied the proposals verbatim and stated that the judgment "has some similarities and some apparent adoption of factual matter" but was otherwise written by the chancellor. Balius's averment that the chancellor copied Gaines's proposals is hardly supported by the fact that Gaines filed a motion to clarify and modify the judgment, indicating her dissatisfaction with the judgment. On this record, we cannot say that the chancellor substantially adopted Gaines's proposed findings of fact and conclusions of law and, therefore, we decline to apply a less deferential standard of review to the May 28 judgment.
¶ 12. Balius cites five statements from the May 28 judgment that he argues were manifestly erroneous and unsupported by the evidence:
(1) Neither party is before the Court with clean hands; (2)[i]t is obvious that each party believes that the other should have no contact with the child, other than the absolute minimum; (3) Both Gaines and Balius failed the co-parenting counseling course; (4) Mark Balius did not get his way in the original judgment of this Court, and until he does, it is apparent that he is obsessed with making sure that Ms. Gaines, her attorney, the Court, and ultimately her son, suffer for it; (5) Each party is in wilful, wanton, and contumacious contempt of the court.
Balius contends that contradictions between the record evidence and these five findings should compel this Court to reverse the chancellor's refusal to modify custody because the custody decision was against the overwhelming weight of the evidence. We disagree. Even if we found *798 the five fact-findings to be unsupported by substantial evidence, those fact-findings were completely irrelevant to the chancellor's decision not to modify custody. The chancellor declined to modify custody because Balius failed to prove a material change in circumstances adversely affecting Jared. The five findings Balius has isolated from the May 28 judgment are entirely immaterial to the determination of whether there was a material change in circumstances adversely affecting Jared. We review below the chancellor's finding of no material change in circumstances justifying a change in custody and find no error. This issue is without merit.
¶ 13. Next, Balius argues that the chancellor erroneously granted Gaines's motion to clarify or modify the May 28 judgment as to the parties' division of the costs of Balius's visitation.[1] The visitation provision of the May 28 judgment provided Balius with certain mandatory summer and holiday visitation outlined in sections (a) and (b). In section (c), the judgment provided Balius with optional holiday visitation, "totally at his own expense." In section (d), the judgment provided Balius with optional visitation on the third weekend of each month, which Balius could exercise monthly or combine into one week's visitation every two months. Section (d) did not state which party was to bear the costs of the optional weekend visitation. Section (e)(ii), under the heading, "Rules as to Visitation," stated, "[t]he parent exercising visitation shall be responsible for the travel expenses of picking up the child at the beginning of visitation and the other parent shall pick up the child at the conclusion of the visitation and be responsible for the expenses thereof."
¶ 14. In her motion to clarify, Gaines argued that the judgment was ambiguous as to whether the cost-sharing provision of section (e)(ii) applied to Balius's optional monthly weekend visitation provided in section (d), or only to the mandatory visitation provisions of sections (a) and (b). Gaines also argued that is was impossible for her to bear the costs of retrieving Jared from the section (d) visitation and requested a modification. Because the chancellor who had authored the judgment recused himself prior to the adjudication of post-trial motions, a new chancellor determined Gaines's motion. The new chancellor found that, due to the limited resources of the parties and the fact that the visitation outlined in paragraph (d) was to be exercised at Balius's option, it was the original chancellor's intention that the cost-sharing provision apply only to the mandatory visitation in sections (a) and (b) and not to the optional visitation in section (d).
¶ 15. Balius argues that the visitation provision was not ambiguous and required no clarification. He argues that the cost-sharing provision of section (e)(ii) clearly applied to Balius's optional visitation in section (d). Therefore, Balius argues, the judgment obligated Gaines, at her cost, to pick up Jared at the conclusion of Balius's optional weekend visitation.
¶ 16. "When questions of meaning arise" as to a judgment, "answers are sought by the same rules of construction which appertain to other legal documents." Estate of Stamper v. Edwards, 607 So.2d 1141, 1145 (Miss.1992). "The determinative factor is the intent of the court ... as gathered ... from all parts of the judgment itself." 46 Am.Jur.2d Judgments § 94 (1994). If the language of a judgment is unambiguous, construction is improper. Id. In the visitation provision, *799 only section (c) specified who was to pay for visitation. The mandatory visitation in sections (a) and (b) and the optional visitation in section (d) did not specify who was to pay. Section (e)(ii), under the heading "Rules as to Visitation," stated that the cost of visitation was to be borne by both parties and did not list the types of visitation to which it applied. Plainly, section (e)(ii) generally controlled visitation costs and section (c) was the only section specifically excepted from section (e)(ii). The judgment was facially unambiguous because section (e)(ii), by its plain language, applied to all of the visitation, and section (c) was the only section specifically excepted from its coverage. Therefore, sections (a), (b) and (d) were controlled by the cost-sharing provision of section (e)(ii). The judgment was not ambiguous.
¶ 17. Though we find the judgment to have been unambiguous, we affirm the chancellor's decision as a modification of the visitation provision. Gaines also moved for a modification of the provision because she could not afford the cost of returning Jared whenever Balius exercised his optional weekend or bimonthly visitation. A chancellor may modify a visitation provision if there is a showing that the prior decree for reasonable visitation is not working. Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986). We will affirm the chancellor's modification of a visitation provision if the decision was supported by substantial evidence. Bratcher v. Surrette, 848 So.2d 893, 897(21) (Miss.Ct.App.2003). At the hearing on this matter, the chancellor found that the judgment should be altered to make Balius pay for all of his optional visitation. This decision was supported by the facts that Gaines was unemployed and that forcing her to pay for Jared's return whenever Balius, in his discretion, chose to exercise his visitation would have placed an undue financial burden on Gaines. The chancellor recited these facts as the basis for his decision at the hearing. We find that the chancellor's modification of the May 28 judgment to require Balius to pay the entire cost of his optional visitation was supported by substantial evidence.

II. THE TRIAL COURT ERRED IN NOT CONSIDERING BALIUS'S FINDINGS OF FACT PRIOR TO ISSUING ITS MAY 28, 2002 JUDGMENT.
¶ 18. At the close of evidence on March 25, 2002, the chancellor requested that the parties submit proposed findings of fact and conclusions of law. Gaines submitted written proposed findings and conclusions, but Balius failed to do so. In his brief, Balius states that he verbally informed the court of his proposed findings and conclusions. Balius argues that the chancellor erroneously rendered the May 28 judgment without considering his proposals and should have granted him additional time to submit written proposals. He states the reason he did not submit written proposals was that the transcript was not ready until May 22, 2002, as shown by the clerk's affidavit included in the record.
¶ 19. A chancellor may, within his discretion, request proposed findings of fact and conclusions of law. Rice Researchers, 512 So.2d at 1266. While Balius complains he lacked time to complete written proposals, he never requested additional time from the court. Balius admits that he orally informed the chancellor of his proposals so the injury of which he complains is, for all practical purposes, negligible. Further, Balius's complaint that Gaines had some unfair advantage is scurrilous because, if the transcript was not ready until May 22, Gaines could not *800 have had the benefit of the transcript either. This issue is totally without merit.

III. THE TRIAL COURT ERRED IN FAILING TO PREPARE AN OPINION FINDING EACH FACT SPECIFICALLY AND SEPARATELY STATING THE CONCLUSIONS OF LAW.
¶ 20. Balius argues that, in the May 28 judgment, the chancellor failed to find the facts specially and state separately the conclusions of law as required in cases of "division of marital property, child custody and visitation." Rule 4.01 provides that, "[i]n all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon." Balius filed a request pursuant to Rule 4.01 within ten days after the entry of judgment. The chancellor denied the request.
¶ 21. The May 28 judgment consisted of twelve pages and included detailed fact-findings and legal conclusions on the issues of modification of custody and visitation. While Mississippi Rule of Civil Procedure 52(a) requires the chancellor to find the facts specially and state separately each conclusion of law when so requested by a party, in this case, the chancellor's judgment already included detailed fact-findings and legal conclusions on all of the major issues in the case. Because there is no apparent deficiency in the chancellor's findings and conclusions and Balius points to none, Balius was not entitled to have the chancellor revisit the judgment. This issue is without merit.

IV. THE TRIAL COURT ERRED IN FAILING TO ADDRESS THE VARIOUS CLAIMS AND COUNTERCLAIMS FILED BY THE PARTIES.
¶ 22. Various petitions for citation of contempt and other relief were before the chancellor at the March 2002 trial. Balius argues he was denied due process because the chancellor failed to rule on all of the issues before the court. Contrary to Balius's assertion, the chancellor expressly disposed of all the issues before him, stating, "all other relief not specifically granted is herein denied." This issue is without merit.

V. THE TRIAL COURT ERRED IN FAILING TO FIND GAINES IN WILLFUL CONTEMPT OF COURT.
¶ 23. Balius filed numerous motions requesting that Gaines be held in contempt and punished for certain past acts. The chancellor found both Gaines and Balius, "to a greater or lesser degree" to be in willful, wanton, and contumacious contempt of court. The chancellor did not specifically find how the parties were in contempt and did not order any punishment for the contempt. Balius contends that he showed Gaines deprived Balius of his court-ordered visitation, filed a false change of address notification, ignored subpoenas, and failed to cooperate in discovery, all justifying penalties. He argues that this was so egregious that the chancellor erred by failing to impose penalties upon Gaines.
¶ 24. Matters of contempt involving the violation of a court's orders are committed to the trial court's sound discretion because, "by institutional circumstance and both temporal and visual proximity," the trial court "is infinitely more competent to decide the matter than are we." Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). While civil contempt is ordered to induce a party's compliance with a court order, criminal contempt punishes past conduct. Varvaris *801 v. State, 512 So.2d 886, 887 (Miss.1987). Because Balius contends that the chancellor should have punished Gaines for prior conduct, Balius's argument contemplates criminal contempt.
¶ 25. A citation for criminal contempt is proper only when the court finds the party has "willfully, deliberately and contumaciously ignored the court." Premeaux v. Smith, 569 So.2d 681, 684 (Miss.1990). Here, the chancellor found both parties in "willful, wanton and contumacious contempt." Balius takes no issue with this finding, and only avers that the chancellor inadequately punished Gaines for her contempt. Criminal contempt is an offense against the court. Varvaris, 512 So.2d at 887. We have found no authority mandating that a court impose punishment upon a finding of criminal contempt. This issue is without merit.

VI. THE TRIAL COURT ERRED IN FAILING TO FIND A MATERIAL CHANGE IN CIRCUMSTANCES AFFECTING THE BEST INTEREST OF THE CHILD HAD OCCURRED AND IN FAILING TO AWARD BALIUS PRIMARY CUSTODY.
¶ 26. Balius moved for a change in custody on April 10, 2001, alleging that "[Gaines's] erratic and violative [sic] behavior, and purposeful interference with [Balius's] visitation" constituted a material change in circumstances adversely affecting Jared. Balius requested that, considering the totality of Gaines's behavior, the court transfer physical custody of Jared from Gaines to Balius. The uncooperative behavior Balius cited in the motion included Gaines's failure to provide Balius with a diaper bag during his scheduled visitation, Gaines's telling Balius that procuring Jared's health insurance was his problem, Gaines's refusal to provide Balius with extra visitation, and Gaines's travel to California with Jared to visit with her family, which caused Balius to miss his scheduled visitation for three weeks. At the trial, Balius argued that Gaines's move in December 2001 was a material change that interrupted Balius's scheduled visitation and, thus, adversely affected Jared. The chancellor held that Balius had failed to make a sufficient showing of a material change in circumstances adversely affecting Jared to justify a change in custody.
¶ 27. In proceedings to modify child custody, the movant bears the burden of proof to show (1) a material change in circumstances adversely affecting the welfare of the minor child; and (2) that the best interest of the child requires the change in custody. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). The chancellor must consider the totality of the circumstances in determining whether a change in custody is warranted. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). Not every change in circumstances justifies a change in custody. Id. We may reverse the chancellor's decision regarding custody modification only if the chancellor abused his discretion and the decision was manifestly wrong, clearly erroneous, or employed an incorrect legal standard. Brocato v. Brocato, 731 So.2d 1138, 1140 (¶ 8) (Miss.1999).
¶ 28. The uncooperative behavior of Gaines of which Balius complained in his motion of April 10, 2001 does not rise to the level of a material change in circumstances justifying a change in custody. A material change in circumstances has been defined as a material change in the overall circumstances in which the child lives, with such materially changed circumstances likely to continue for the foreseeable future. Touchstone v. Touchstone, 682 So.2d 374, 378 (Miss.1996). The few instances of Gaines's failure to cooperate with Balius over petty day-to-day child *802 care responsibilities fall far short of constituting a change in the overall circumstances of Jared's life allowing the drastic legal action of a change of custody. Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983). "[O]nly parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change." Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991).
¶ 29. Regarding Gaines's move to California, the chancellor did not abuse his discretion in finding the move was not a material change in circumstances adversely affecting Jared. A custodial parent's move with the child to a distant location has been held to be a material change in circumstances but one that, without more, does not adversely affect the child to support a change in custody. Spain v. Holland, 483 So.2d 318, 321 (Miss.1986). The Spain court stated that "[w]e close our eyes to the real world if we ignore that ours is a mobile society. Opportunity and economic necessity transport perfectly responsible adults many miles from their homes." Id. We have recently applied Spain's holding that a custodial parent's move is not per se grounds for a change of custody, even when the move curtails the non-custodial parent's visitation rights. Lambert v. Lambert, 872 So.2d 679, 686 (¶ 28) (Miss.Ct.App.2003). A non-custodial parent's visitation rights are "legally irrelevant to the matter of permanent custody." Spain, 483 So.2d at 321. Balius raises no issue of an adverse effect of the move upon Jared beyond the adjustment of Balius's visitation rights. This issue is without merit.

VII. THE TRIAL COURT ERRED IN FAILING TO FIND GAINES IN VIOLATION OF THE CLEAN HANDS DOCTRINE.
¶ 30. The chancellor stated that, based upon the parties' numerous filings, "neither of these parties is before the Court with clean hands." Balius argues that the chancellor should have estopped Gaines from any relief due to unclean hands. In attempting to wield the doctrine that "he who comes into equity must come with clean hands," Balius forgets the maxim "he who seeks equity must do equity." O'Connor v. Dickerson, 188 So.2d 241, 246 (Miss.1966). As the chancellor also found that Balius was before the court with unclean hands, Balius's argument that the chancellor should have punished Gaines for conduct of which he is also guilty is patently without merit and frivolous.

VIII. THE TRIAL COURT ERRED IN ORDERING GAINES TO PAY CHILD SUPPORT FOR THE TWO MONTHS THAT GAINES FLED THIS JURISDICTION AND HID THE CHILD IN CALIFORNIA.
¶ 31. The ex parte temporary order of December 13, 2001 imposed a moratorium on Balius's child support obligation. The order of December 21, 2001 continued the moratorium. The December 21 order was held in abeyance on December 31. Balius ended up withholding three months' child support from Gaines. In the May 28 judgment, the chancellor ordered Balius to pay Gaines the three months' past due child support. Additionally, the chancellor sanctioned Balius and his attorney for his improper use of the ex parte powers of the court in obtaining the orders of December 13 and 21.
¶ 32. Balius argues that the chancellor erred by ordering him to pay the three months' child support because Gaines secreted Jared from him and deprived him of his December visitation. Balius cites Cole *803 v. Hood, 371 So.2d 861 (Miss.1979) for the proposition that Gaines's secreting Jared absolved his obligation to pay child support. In Cole, the mother of the minor children deliberately concealed the children from the father for eight years by moving around the country and hiding her address, depriving the father of his visitation rights. Id. at 863. The supreme court held that, by hiding the children from their father, the mother had waived her right to demand child support. Id. at 864.
¶ 33. The facts in this case are far removed from the facts in Cole. Gaines provided Balius with her address the day after her move and sent Balius a letter offering additional visitation. Then, Balius improperly obtained the ex parte order suspending his child support obligation and, later, the order awarding Balius custody. Gaines did hide Jared from Balius for approximately ten days because she believed the custody order was improper. We in no way condone a party's acting in disregard of a court order. However, we find that Gaines's hiding Jared for the ten days that the improper order was in effect was an insufficient infringement of Balius's rights to waive Gaines's ability to demand child support. The chancellor was within his discretion in ordering Balius to pay the three months' child support.

IX. THE TRIAL COURT ERRED IN FAILING TO AWARD BALIUS MONIES HE EXPENDED IN ATTEMPTING TO FIND HIS CHILD PURSUANT TO THE COURT'S DECEMBER 21, 2001 ORDER.
¶ 34. After the December 21 order granting custody to Balius, Balius traveled to California to take control of Jared. As required by the December 21 order, Balius accounted for his travel expenses which amounted to $5,128.47, including the costs of an attorney and a private investigator. Balius complains that the chancellor erred by failing to award Balius these expenses in the order of May 28, 2002. This issue is without merit. As the chancellor held that Balius's acquisition of the December 21 order was an abuse of the ex parte powers of the court, the chancellor acted well within his discretion in denying Balius any costs he incurred in attempting to effect the provisions of the improperly obtained order.

X. THE TRIAL COURT ENGAGED IN IMPERMISSIBLE EX PARTE COMMUNICATIONS WITH GAINES'S COUNSEL DURING THIS CASE.
¶ 35. An order in the record shows that Chancellor Carter Bise recused himself from this case on November 26, 2002. Balius argues that Chancellor Bise recused himself due to improper ex parte contact with Gaines's attorney, and that such conduct casts an appearance of impropriety over the May 28 judgment, entitling Balius to a new trial.
¶ 36. At the hearing on post-trial motions, Gaines's counsel, David Daniel, explained that Balius had filed a Bar complaint against Daniel and Chancellor Bise had sent a letter to the Bar stating that Daniel's conduct had not violated any court rules. Daniels stated that the letter was the reason Chancellor Bise recused himself. No other evidence concerning Chancellor Bise's recusal appears in the record. Because the record regarding this matter is entirely inadequate to afford appellate review of this issue, we decline to do so. Creel v. Cornacchione, 831 So.2d 1179, 1183 (¶ 17) (Miss.Ct.App.2002).

XI. THE TRIAL COURT ERRED IN FAILING TO CONSIDER EVIDENCE RELEVANT TO GAINES'S MENTAL HEALTH HISTORY.
¶ 37. At the trial, Balius sought to introduce an answering machine tape *804 from his home. The tape contained a message from Gaines's mother to Balius tending to show that Gaines's mother considered Gaines to be mentally unstable. The trial court found that the tape constituted inadmissible hearsay and excluded the tape. Balius argues the exclusion was error because the tape showed that Gaines's mother considered her mentally unstable and Gaines's mental health was relevant to the custody determination.
¶ 38. We review the trial court's decision admitting or excluding evidence for abuse of discretion. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Balius offered the statements on the tape for their truth as to Gaines's mental stability. Gaines's mother was not a witness at the trial. M.R.E. 801(d)(2). The trial court correctly found that the tape was inadmissible hearsay. Balius argued that the tape was admissible under the "Other Exceptions" provision of Mississippi Rule of Evidence 803(24). The trial court held that the tape was inadmissible under this hearsay exception because Rule 803(24) requires for admissibility that the proponent of the hearsay evidence make his intention to offer the evidence known to the other party in advance of the trial, which Balius failed to do. The trial court correctly excluded the tape.

XII. THE TRIAL COURT ERRED BY PREVENTING ANY CHALLENGE TO THE OPINION OF THE COURT APPOINTED EXPERT.
¶ 39. In the court's temporary order of August 1, 2001, the court suspended the trial and ordered the parties to attend co-parenting counseling with Vivian Tate. The court ordered that Tate could not be called as a witness by either party in subsequent proceedings, that Tate would not report to the court any details of her counseling, but that Tate would inform the court whether or not the parties were cooperating with her counseling effort. Tate eventually submitted a letter to the court, stating that the parties had not made any progress after counseling. In the May 28 judgment, the chancellor stated that the parties had failed the co-parenting counseling.
¶ 40. The chancellor found that, between December 2001 and March 2002, Balius filed numerous documents, including a subpoena duces tecum, in an effort to obtain Tate's counseling notes. None of Balius's pleadings were served on counsel for Gaines. Prior to a hearing on the matter, Balius assured the court that Gaines need not attend the hearing because Balius only wanted the records for his own purposes in pursuing further counseling, not for use as evidence against Gaines. Balius never obtained Tate's records. Then, at the trial, Balius vigorously argued that the court should admit Tate's records into the case because they were relevant to the issues of custody and visitation. The chancellor found that Balius's efforts to subpoena Tate's records constituted an abuse of the court system and imposed sanctions on Balius and his attorney.
¶ 41. On appeal, Balius posits both the argument that he is entitled to Tate's records for his own personal use and the argument that Tate's records should have been admitted into the case by the chancellor. Gaines's position is that these arguments are duplicitous, and we agree. The chancellor ordered the parties to undergo counseling with Tate and barred the use of Tate's records in litigation by either party. Balius cannot, scrupulously, propound simultaneously the argument that he desires the records only *805 for his own personal use, a use which might be permissible under the court's order, and that he is entitled to wield the records against Gaines, a use which plainly is barred by the court's order. The chancellor's finding that Balius sought to obtain the records for use at trial in violation of the court's order and imposition of sanctions upon Balius for abuse of the court system was within the chancellor's sound discretion.
¶ 42. Balius also argues that, because he was denied access to Tate's records, the chancellor erroneously relied upon Tate's findings by stating that the parties failed co-parenting counseling. This argument is without merit. The chancellor's finding that the parties failed co-parenting counseling was based upon Tate's report to the court that was ordered by the chancellor, not upon any records denied to Balius.

XIII. THE TRIAL COURT COMMITTED MANIFEST ERROR IN AWARDING ATTORNEY'S FEES TO GAINES FROM BALIUS AND HIS ATTORNEY AND NOT AWARDING BALIUS ALL COSTS INCLUDING HIS ATTORNEY'S FEES.
¶ 43. Balius avers that the chancellor's award of attorney's fees to Gaines was erroneous because the chancellor's fact-findings supporting the award were insufficient. Because Balius fails to point to any deficiencies in the chancellor's findings or cite any authority that would require more detailed findings undergirding the award of attorney's fees, this issue is without merit. We observe that, because the chancellor awarded attorney's fees as sanctions against Balius for abuse of the court system, the chancellor was not required to make findings on the McKee factors regarding Gaines's ability to pay. Martin v. Martin, 803 So.2d 511, 513 (¶ 6) (Miss.Ct.App.2002) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)).
¶ 44. Balius also argues that he showed Gaines to be in willful contempt of prior court orders, which entitled him to attorney's fees. The chancellor did find both Balius and Gaines to be in contempt of court. As previously discussed, the law does not require a chancellor to impose punishment upon a finding of criminal contempt. In light of Balius's established misconduct for which the chancellor imposed sanctions, it was logical and within the chancellor's sound discretion to deny attorney's fees to Balius.
¶ 45. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] We do not address the chancellor's modification of the May 28 judgment to limit Balius's visitation because that issue was not raised by Balius on appeal.