937 So.2d 45 (2006)
Raymond H. BURDSAL, Appellant
v.
MARSHALL COUNTY, Mississippi, Appellee.
No. 2005-CA-01085-COA.
Court of Appeals of Mississippi.
September 5, 2006.
*46 Christopher M. Howdeshell, attorney for appellant.
Tacey Clark Clayton, Tupelo, attorney for appellee.
*47 Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. The Board of Supervisors for Marshall County ("the Board") brought an action against Raymond H. Burdsal in the Chancery Court of Marshall County seeking to have Powell Chapel Road declared a public road and to enjoin Burdsal from obstructing it. After reviewing testimony and evidence on the matter, the chancellor found for the Board. Aggrieved, Burdsal appeals. Finding error, we reverse and remand.

FACTS
¶ 2. Powell Chapel Road ("the road") is a gravel road which, according to testimony, has been in existence since the early 1900s. The road commences at the southern right-of-way line of U.S. Highway 4 in Marshall County. The road originally ran through property owned by Burdsal's grandparents. In 1950, Burdsal's grandparents conveyed seventy acres to Burdsal's mother, who later conveyed it to her children. Burdsal now owns approximately twenty-two acres adjacent to the road. Mount Hope Cemetery, a small private cemetery of the Colston family (Burdsal's mother's family), is located near the southeastern end of the road on the property of Ronald Mitchell. Powell Chapel Church is located on the road as well.
¶ 3. In 1997, the Board installed an "E-911" sign at the entrance to the road, which was subsequently taken down by a former supervisor for the county. On June 12, 2000, the Board voted to hold a public hearing, scheduled for June 26, 2000, to discuss the adoption of a new road registry and map pursuant to Mississippi Code Annotated section 65-7-1 (Rev.1998). The Board posted notice of the hearing in The South Reporter, a newspaper of general circulation in Marshall County, on June 15, 2000. The road registry and county road map were then adopted by order of the Board on June 26, 2000.
¶ 4. In January of 2004, Burdsal erected a gate and sign across the entrance of the road at the right-of-way line of U.S. Highway 4. On January 16, 2004, Larry Hall, the Marshall County road administrator, requested that Burdsal remove the gate. Burdsal complied, but left the gate posts. The Board subsequently removed the posts.
¶ 5. On February 9, 2004, the Board filed an action in the Chancery Court of Marshall County seeking to have the road declared public. The complaint also sought to enjoin Burdsal from further obstructing the road. The chancellor made a ruling from the bench on April 19, 2005, finding that Powell Chapel Road was a public road by prescription and enjoined Burdsal from further obstructing the road. The chancellor issued a judgment on May 7, 2005, stating the same. Aggrieved, Burdsal timely appeals, asserting: (1) that the chancellor committed reversible error by declaring Powell Chapel Road a public road, and (2) that the chancellor committed reversible error by allowing testimony on behalf of the Board as to maintenance on Powell Chapel Road without supporting orders of the Board of Supervisors.

STANDARD OF REVIEW
¶ 6. We will not disturb a chancellor's findings of fact when supported by substantial evidence unless he abused his discretion, was manifestly wrong, or applied an improper legal standard. Dobbs v. Dobbs, 912 So.2d 491, 493 (¶ 3) (Miss.Ct. App.2005) (citing Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002)). This Court reviews questions of law de novo. Balius v. Gaines, 908 So.2d 791, 797 (¶ 10) (Miss.Ct.App.2005) (quoting Burnett *48 ex rel. Islam v. Burnett, 792 So.2d 1016, 1019 (¶ 6) (Miss.Ct.App.2001)).

ISSUES AND ANALYSIS

I. Whether the trial court committed reversible error in allowing testimony on behalf of the Board as to maintenance on Powell Chapel Road without supporting orders of the Board of Supervisors.
¶ 7. Burdsal argues that the chancellor erred by allowing Willie Flemon, Donald Mitchell and Larry Hall to testify as to maintenance of the road by the Board. Burdsal argues that, as these witnesses were all former and present supervisors or their employees, their parol testimony is inadmissible to tell what the Board did or did not do.
¶ 8. In Myers v. Blair, 611 So.2d 969 (Miss.1992), also a prescription case, the supreme court stated:
In Martin v. Newell, 198 Miss. 809, 815, 23 So.2d 796 (1945), the Court stated: "We have passed on this question repeatedly, saying the minutes of the board of supervisors are the exclusive evidence of what the board did."
At the trial of this case individual supervisors, past and present, were permitted to testify the road was private or public, however, no board minutes were offered in evidence. In Smith v. Board of Supervisors of Tallahatchie County, 124 Miss. 36, 41, 86 So. 707 (1920), the Court concluded:
We also think it was error for the court to permit individual members of the board of supervisors to testify what the board did, and what the board understood, and what the board had authorized to be done in the premises. A board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did. The individuals composing the board cannot act for the county, nor officially in reference to the county's business, except as authorized by law, and the minutes of the board of supervisors must be the repository and the evidence of their official acts.
Myers, 611 So.2d at 972-3. But cf. George County v. Davis, 721 So.2d 1101, 1107 (Miss.1998) (failing to address chancellor's allowance of admission of testimony from board members); Lee County Bd. of Supervisors v. Scott, 909 So.2d 1223, 1226 (Miss.Ct.App.2005) (failing to address circuit judge's allowance of admission of testimony from board members).
¶ 9. Accordingly, the chancellor was in error in admitting the testimony of the present and former supervisors and their employees. If improperly admitted evidence constituted a determining factor in a chancellor's decision, there is reversible error. Sproles v. Sproles, 782 So.2d 742, 749 (¶ 29) (Miss.2001). However, when improperly admitted evidence was not a determining factor, and the chancellor looked to the weight of other evidence, the admission of evidence is harmless. Id. The chancellor in the case sub judice stated in his bench opinion, "Everybody that's testified, other than Mrs. Smith and Mr. Burdsal, has said that it has been a public road all of these years. And that it is known as a public road." Considering that the only persons other than Burdsal and Ruth Smith to testify were either current or past supervisors or their employees, it seems that such improperly admitted testimony may well have been a determining factor. However, in order to better gauge whether the chancellor viewed such testimony as a determining factor, we will evaluate the chancellor's finding that the road *49 was public without considering such improperly admitted testimony.

II. Whether the trial court committed reversible error by finding that Powell Chapel Road was a public road.
¶ 10. Burdsal argues that the chancellor erred by finding that the road was public. He argues that the elements of prescription were not met.
¶ 11. In order for a private road to become public by means of prescription, "it must be habitually used by the public in general for a period of ten years, and such use must be accompanied by a claim from the public of the right to do so." Lee County Bd. of Supervisors v. Scott, 909 So.2d 1223, 1225 (¶ 7) (Miss.Ct.App.2005) (citing George County v. Davis, 721 So.2d 1101, 1107 (¶ 23) (Miss.1998)). In order to establish a successful claim for prescription, the Board must establish six elements: (1) open, notorious and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for at least ten years. Id. (citing Myers, 611 So.2d at 971).

(1) Open, notorious and visible
¶ 12. Excluding the inadmissible testimony, the record reveals that the congregation of Powell Chapel Church has used the road openly for more than fifty years, though Burdsal contends that the congregation has always had either his or his family's permission to such use. Burdsal's testimony also reveals that the road has been used by hunters. As to evidence of maintenance of the road by Marshall County, the only admissible references to such appearing in the record are contained in the testimony of Burdsal and of Ruth Smith, a family member of Burdsal's. Burdsal testified that he "was told" that one of his uncles, who was a supervisor at one point, "dropped a little gravel in the road from time to time." The only other reference, from the testimony of Ruth Smith, occurred in the following exchange on cross-examination by the Board:
Q. And you know that [Willie Flemon] did some road work on Powell Chapel Road a few years back, when one of the Colstons called him and asked him to do it for a Colston funeral?
A. I do not know . . . who called him. Claude said he was going to, and Mrs. Ruth Mitchell, Donny's mother, said she was going to. And I don't know  obviously one of them did.
. . . .
A. Somebody came in there and did enough that you could get up to the cemetery.
Q. Somebody from the county?
A. I would assume they were from the county.
¶ 13. Because there is substantial evidence supporting the first element of prescription, we cannot say the chancellor erred in his finding that the possession was open, notorious and visible.

(2) Hostile
¶ 14. The use of the road by church members and hunters does not, in and of itself, establish hostility. Permissive use cannot, by definition, be hostile use; lack of objection, however, does not automatically establish consent. Moran v. Sims, 873 So.2d 1067, 1069 (¶ 7) (Miss.Ct. App.2004). It is clear that the chancellor was somewhat unclear on the requirements of this element, as evidenced by the following:
THE COURT: . . . I don't know how you do hostile on a road, other than people walk up and down the road with *50 a sign saying this is a public road. I don't know how you would do it. But it's evident to the Court and the testimony before the Court, and from what the Court viewed when the Court went out there, that this is a well-traveled road. That it is well-maintained up to the point where Powell Chapel Church is, and after that it is just  it's nothing, just a trail.
¶ 15. Burdsal testified that "we gave [the church members] permission to use to  to go to their church until something could have been done [about the fact that the road the church members had been using had washed out]." Burdsal's testimony as to granting permission is corroborated by the fact that his grandfather, since the 1950s, paid to put up a sign on his property identifying church times and services.
¶ 16. The only things in the record suggesting hostility of possession were: the erecting of an "E-911" sign in 1997, which was later taken down; and in January of 2004, when Burdsal erected a gate, which Board subsequently asked him to remove. Burdsal testified that he erected the gate at this point because he was starting to remodel his grandparents' old house. Burdsal removed the gate at the request of the Board, but left the gate posts standing; however, the Board subsequently removed the posts.
¶ 17. Thus, we find nothing else in the record suggesting hostile possession by Marshall County prior to at least 1997. As a result, we find that the chancellor erred by finding the element of hostility of possession to be met.

(3) Under claim of ownership
¶ 18. There was evidence, though sparse without the inadmissible testimony, that Marshall County performed maintenance on the road. This element is thus established.

(4) Exclusive
¶ 19. The definition of exclusivity of possession when dealing with prescription and adverse possession was stated by this Court in Lynn v. Soterra, Inc., 802 So.2d 162, 168 (¶ 17) (Miss.Ct.App.2001): "The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership." See Keener Properties, L.L.C. v. Wilson, 912 So.2d 954, 956 (¶ 6) (Miss.2005) (adopting above definition). "Exclusivity . . . means that the use was consistent with an exclusive claim to the right to use." Wilson, 912 So.2d at 957 (¶ 7) (quoting Moran, 873 So.2d at 1069-70 (¶ 10)).
¶ 20. The record reveals that the public did not have an exclusive claim to the right to use of the road. Burdsal's testimony, that he gave the church members permission to use the road, suggests that church members' use of the road was not a right, but a privilege granted by him. As stated earlier, Burdsal's testimony as to granting permission is corroborated by the fact that, in the 1950's, Burdsal's grandfather erected a sign on his property announcing the times of various church services. Therefore, we conclude that the possessory acts in this case were not sufficient to put Burdsal upon notice that the road was being held under an adverse claim of ownership. This element has not been established.

(5) Peaceful
¶ 21. Again, there seems to have been no controversy over ownership of the road until the erection of the E-911 sign in 1997 *51 and Burdsal's erection of the gate in January 2004. This element is established.

(6) Continuous and uninterrupted for at least ten years
¶ 22. The road has continued to be used in the same fashion for more than fifty years. As mentioned, however, without including the improperly admitted testimony, the elements of prescription simply cannot be met for the ten-year requirement.
¶ 23. In sum, we find that two of the elements for prescription have not been met, namely, exclusivity and continuous and uninterrupted for ten years. We also find that the chancellor improperly admitted the testimony of the present and former supervisors and their employees and that such testimony was a determinative factor in the chancellor's decision. Therefore, we reverse the decision of the chancery court and remand this matter for a new trial.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARSHALL COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.