*1223
 
 GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Raymond H. Burdsal now presents his second appeal to this Court regarding whether Powell Chapel Road, located in Marshall County, is his private drive or a public road. After a trial on remand, the chancellor again held that Powell Chapel Road had become a public road by prescription. In this appeal, Burdsal claims that the chancellor’s finding, which held that the Board of Supervisors for Marshall County (“the Board”) had established exclusive, hostile use of the road that was continuous and uninterrupted for a ten-year period, was manifest error or clearly erroneous. We find no error and affirm.
 

 FACTS
 

 ¶ 2. This appeal involves a dispute as to the ownership of Powell Chapel Road, a gravel road off of U.S. Highway 4 in Marshall County. The road originally ran through Burdsal’s grandparent’s land. Currently, Burdsal owns 22.7 acres adjacent to the road. Powell Chapel Church and Mount Hope Cemetery are both located on the road. The road is used by church members and by others visiting the cemetery. In 2004, Burdsal installed a gate where the road begins at U.S. Highway 4. Shortly thereafter, at the Board’s request, Burdsal removed the gate, but he did not remove the gate posts. The Board then removed the gate posts at its own expense.
 

 ¶ 3. The Board filed a complaint for injunctive relief and damages against Burdsal. The Board requested that the chancellor declare Powell Chapel Road a public road and enjoin Burdsal from blocking the road. Following trial, the chancellor granted the Board’s request and declared that Powell Chapel Road was a public road. Burdsal timely appealed to this Court, and the decision of the chancellor was reversed and remanded.
 
 See Burdsal v. Marshall County,
 
 937 So.2d 45 (Miss.Ct.App.2006)
 
 (“Burdsal I
 
 ”).
 

 ¶ 4. In
 
 Burdsal I,
 
 this Court stated that, because the Board claimed that the road was public by means of prescription, the Board must prove that the public use of the road was: “(1) open, notorious and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for at least ten years.”
 
 Id.
 
 at 49(¶ 11) (citing
 
 Lee County Bd. of Supervisors v. Scott,
 
 909 So.2d 1223, 1225(¶ 7) (Miss.Ct.App.2005)). This Court held that the Board successfully proved only elements one, three, and five. Further, during the first trial, the chancellor erroneously considered testimony from county officials in lieu of the Board’s official minutes.
 
 Id.
 
 at 48 (¶¶ 7-9).
 

 ¶ 5. On remand, a second trial was held on the three elements of prescription that were not yet proven by the Board. Again, the chancellor found that the Board met its burden of establishing each element of prescription and held that Powell Chapel Road was a public, county-owned road. The chancellor enjoined Burdsal from obstructing the road or placing private property signs on the road.
 

 ¶ 6. Burdsal comes before this Court on a timely filed second appeal. He claims that the Board has not properly proven the elements of hostile, exclusive, or continuous and uninterrupted use for a period of ten years.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court will not reverse a chancellor’s determinations or findings when they are supported by substantial, credible evidence, unless the chancellor’s
 
 *1224
 
 findings are an abuse of discretion, manifestly wrong, clearly erroneous, or the result of an erroneously applied legal standard.
 
 Jackson v. Peoples Bank and Trust Co.,
 
 869 So.2d 422, 423(¶ 5) (Miss.Ct.App.2004). Furthermore, we emphasize that “[i]t is not the job of this Court to redetermine questions of fact resolved by the chancellor.”
 
 Id.
 
 (citing
 
 Johnson v. Black,
 
 469 So.2d 88, 90 (Miss.1985)).
 

 ANALYSIS
 

 I. Whether the chancellor erred in determining that Powell Chapel Road is a public road, by prescription.
 

 ¶ 8. Burdsal argues that the chancellor’s findings of fact as to the elements of hostility, exclusivity, and continuous and uninterrupted use for a ten-year period were manifestly wrong or clearly erroneous. The Board asserts that the testimony at trial was sufficient to meet its burden of proof as to those elements of prescription.
 

 ¶ 9. For a private road to become public property by prescription, “the road must be habitually used by the public in general for a period of ten years, and such use must be accompanied by a claim by the public of the right so to do.”
 
 George County ex rel. Bd. of Supervisors v. Davis,
 
 721 So.2d 1101, 1107(¶ 23) (Miss.1998). The Board must prove that the use is: (1) open, notorious, and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years.
 
 Id.
 
 at (¶ 24) (quoting
 
 Myers v. Blair,
 
 611 So.2d 969, 971 (Miss.1992)). Here, we need only address the three elements remaining on remand — • hostility, exclusivity, and continuous and uninterrupted use for ten years.
 

 A. Hostility
 

 ¶ 10. As this Court held in
 
 Burd-sal I,
 
 “[t]he use of the road by church members and hunters does not, in and of itself, establish hostility. Permissive use cannot, by definition, be hostile use; lack of objection, however, does not automatically establish consent.”
 
 Burdsal I,
 
 937 So.2d at 49(¶ 14) (citing
 
 Moran v. Sims,
 
 873 So.2d 1067, 1069(¶7) (Miss.Ct.App.2004)).
 

 ¶ 11. Burdsal’s defense of the Board’s claim of hostile use is that the public was given permission to use the road, and because of that permission, there can be no instance of hostile use. Specifically, Burd-sal testified that he overheard a conversation between his grandfather and J.M. “Flick” Ash in which Burdsal’s grandfather said that permission had been given to use the road. The Board responds that Burdsal’s testimony regarding the issue of permission to use the road is insufficient and lacks credibility.
 

 ¶ 12. On remand, the chancellor heard testimony that the church members use the road between two to four nights per week, and the public uses the road to access the cemetery. Powell Chapel Road is not only used by church members to access the church, but it is also used by the public to attend funerals and for hunting and fishing. The Board presented witnesses who have used the road for many years and who had never received permission to do so by anyone in the Burdsal family.
 

 ¶ 13. The only evidence of permission is Burdsal’s own testimony. Burdsal does not claim that he heard his grandfather actually grant permission to anyone. Instead, he said that he heard his grandfather discussing the issue of permission with Ash. Burdsal testified that he was ten years old at the time of this conversation. Further, Burdsal did not know to whom this permission was given.
 

 
 *1225
 
 ¶ 14. Burdsal had the burden to prove that permission had been given because, as this Court has held: “Requiring a litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable. The law typically frowns upon requiring a party to prove a negative averment.”
 
 Morris v. W.R. Fairchild Constr. Co.,
 
 792 So.2d 282, 284(¶ 9) (Miss.Ct.App.2001). Here, it would be unreasonable to require that the Board prove the negative that permission was not given by Burdsal’s grandfather.
 

 ¶ 15. The chancellor had the opportunity to hear Burdsal’s testimony on the issue of permission in both the first trial and the second trial on remand. It is the chancellor’s role to weigh the credibility of such testimony. The chancellor found this evidence insufficient to rebut the Board’s evidence of hostile use. We find no error in the chancellor’s determination, especially in light of the credibility issues associated with Burdsal’s childhood memory.
 

 ¶ 16. Therefore, while it is true that permissive use cannot rise to the level of hostile use, Burdsal’s testimony regarding permission was insufficient to rebut the Board’s evidence of hostile use. The chancellor’s finding that the element of hostility had been met was not manifestly wrong or clearly erroneous. Accordingly, this issue has no merit.
 

 B. Exclusivity
 

 ¶ 17. Exclusivity is defined as follows: “The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership.”
 
 Lynn v. Soterra, Inc.,
 
 802 So.2d 162, 167(¶ 17) (Miss.Ct.App.2001) (quoting
 
 Rawls v. Parker,
 
 602 So.2d 1164, 1168 (Miss.1992)).
 

 ¶ 18. In
 
 Burdsal I,
 
 this Court directed the chancellor to revisit this issue on remand, stating:
 

 Burdsal’s testimony, that he gave the church members permission to use the road, suggests that [the] church members’ use of the road was not a right, but a privilege granted by him. As stated earlier, Burdsal’s testimony as to granting permission is corroborated by the fact that, in the 1950[s], Burdsal’s grandfather erected a sign on his property announcing the times of various church services.
 

 Burdsal I,
 
 937 So.2d at 50(¶ 20).
 

 ¶ 19. As we have held above, Burdsal’s testimony regarding permission was inconsistent and unsubstantiated. At the time of
 
 Burdsal I,
 
 it appeared that Burdsal’s claim was corroborated by his grandfather’s purchase of a church sign; however, on remand, that statement was directly contradicted by Leo Bogart, a deacon at Powell Chapel Church. Bogart testified that Burdsal’s grandfather never built a sign for the church because the members of the church always provided the sign.
 

 ¶ 20. Burdsal argues that more than mere travel by the public must be shown by the Board. However, there is ample evidence of the use of the road by members of the church, people visiting the cemetery, and people going hunting and fishing.
 

 ¶ 21. Marie Colston Smith testified in the first trial that there was a hunting club at the opposite end of the road. She stated that people who were not church mem
 
 *1226
 
 bers also used the road. Burdsal argues that until 2005, when the entire road was graveled, the road was merely a “pig trail.” However, Smith contradicted this argument when she testified that the road was graveled all the way up to Powell Chapel Church, and it only turned into a “pig trail” past the church.
 

 ¶ 22. On remand, Bogart testified that he personally made requests to several different Marshall County Board Supervisors to make repairs to Powell Chapel Road. Bogart noted that each time he requested repairs by the Board, it was always completed in a timely fashion beginning with the worst portions of the road first. Burdsal testified that frequent maintenance was completed on the road and that neither he nor any member of his family had graded or completed any kind of maintenance on the road.
 

 ¶ 23. Additionally, Burdsal claims that joint use of the road does not constitute exclusive use by the county. Yet, the testimony has shown that the road was used by church members, members of the community to attend funerals and burials, as well as frequent hunters and fishers. These facts indicate that the public use of the road amounts to more than simply joint use of the road by Burdsal and the church.
 

 ¶ 24. Because there was sufficient evidence to show that the public used the road, the chancellor’s finding that the element of exclusive use had been met was not manifestly wrong or clearly erroneous. Accordingly, this issue has no merit.
 

 C. Continuous and Uninterrupted Use for Ten Years
 

 ¶ 25. In
 
 Burdsal I,
 
 this Court held that: “The road has continued to be used in the same fashion for more than fifty years. As mentioned, however, without including the improperly admitted testimony, the elements of prescription simply cannot be met for the ten-year requirement.”
 
 Burdsal I,
 
 937 So.2d at 51(¶ 22).
 

 ¶ 26. By showing that the public utilized this road on a frequent basis to attend church services, funerals, and to hunt and fish, the testimony on remand sufficiently established the remaining elements of prescription. This use has continued uninterrupted for more than fifty years, well over the ten-year requirement. Therefore, the chancellor properly concluded that the element of continuous and uninterrupted use for at least ten years was established. Accordingly, this issue has no merit.
 

 II. Whether the chancellor erred by finding that Burdsal had violated Mississippi Code Annotated section 65-7-7 and enjoining Burdsal from obstructing the road.
 

 ¶27. Mississippi Code Annotated section 65-7-7 (Rev.2005) states, in pertinent part, that:
 

 If any person shall fell any brush or tree and leave any portion thereof in any stream or on any public highway, road, or ditch draining the roadway or
 
 obstruct the same in any manner whatever,
 
 and not immediately remove the obstruction, the overseer of the road shall remove the same, and the person so felling the tree or bush, or otherwise obstructing the road or water shall forfeit and pay all expenses of removing the same, to be recovered before any justice of the peace of the county, in the name of the county. It is the duty of the overseer to cause suit to be commenced therefor, and such person shall
 
 *1227
 
 be liable for all damages occasioned to another by the obstruction.
 

 (Emphasis added).
 

 ¶ 28. Burdsal argues that the road is not a public road; thus, the gate he erected across the entrance to the road did not violate section 65-7-7. However, because we affirm the chancellor’s finding that the road is a public road by prescription, we must also affirm the chancellor’s ruling that Burdsal violated section 65-7-7. The chancellor was correct to enjoin Burdsal from obstructing a public road. Accordingly, this issue has no merit.
 

 ¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.